| iWOODARD, Judge,
dissenting.
I respectfully disagree with the majority that the contingency fee which Davidson charged Mission was reasonable, for the following reasons:
It is unnecessary to decide whether there was a valid contingency fee contract in the case sub judice. In a similar case, Pharis & Pharis v. Rayner, 397 So.2d 1295 (La.1981), the plaintiff law firm sought to recover under a contingency fee contract for services rendered in protecting the defendant’s interest in the community regime formerly existing between herself and her deceased husband.
*485 The trial court and the Third Circuit Court of Appeal rejected the law firm’s demands entirely finding that the contingency fee contract was void for lack of consent due to error of fact. However, after granting a writ of review, the Supreme Court held that it was unnecessary to decide whether the contract was valid because it was clear that the attorney had rendered valuable services for which he should be compensated but that the fee provided by the contract would have been excessive and unreasonable under the circumstances. Thus, the Supreme Court reversed the judgment of the court of appeal and remanded it with instructions to award the law firm a reasonable fee in light of evidence in the record and the factors set forth in the Code of Professional Responsibility.
|2The majority has outlined the Louisiana State Bar Association’s guidelines, Rule 1.5(a) of The Code of Professional Conduct, which are to assist courts in determining the reasonableness of fees including those contingent on the outcome of the case, and has interpreted each one’s application to the case sub judice. In so doing, the majority listed the services the Davidson firm performed on the ease as a whole, but did not specify which services were performed on behalf of Mission alone which would be necessary to determine a reasonable fee for Mission. Thus, the majority ignores the question of whether the $543,382.43 contingency fee charged Mission was proportionate to the time and labor ■spent by Davidson in pursuit of Mission’s interest. In fact, this would be difficult to do because the record indicates that this contingent fee bears no proportion to time and labor. Jeffrey Rhoades, the Davidson attorney who handled the Gearench ease, testified that he billed Travelers for all work done on the Gearench indemnity action except for work that was “unique” to Mission; that this “unique” work consisted only of correspondence or telephone conversations updating the Texas Receiver about the status of the case or settlement negotiations; and that he estimated the time spent on same to be “fifty or less” hours.
I recognize that the Gearench indemnity case involved intense litigation, as the case went back and forth between federal district and appellate courts for three and one-half years; that the issues involved were novel and difficult; and, that Davidson recovered the full amount of the settlement plus legal interest. Notwithstanding, the undisputed fact remains that, for the most part, when Davidson was paid $61,796.10 by Travelers, it was paid in full, except for the fifty hours attributed solely to Mission, for all services. Further, Davidson conceded that it was paid its normal hourly rate for every hour it spent to recover the $2,000,000 settlement, which included Mission’s subrogated portion, and admitted that it received a reasonable fee for the services rendered. How then can an additional fee of $543,382.43, for the same services, be reasonable? And finally, reasonableness of a contingency fee depends on the attorney’s assumption of risk that he or she will not get paid for legal services except from the successful outcome of the litigation. See Louisiana State Bar Association v. Gross, 576 So.2d 504 (La.1991).
Davidson contends that it “assumed the sole liability to pay any costs” of prosecuting the Gearench indemnity claim on behalf of Mission and that had Travelers settled its claim for just hits share, Davidson’s fee would have been contingent on securing the $1,700,000 on behalf of Mission.
The majority points to the conflict in testimonies between Mission’s and Davidson’s experts regarding whether a real risk existed for Davidson. I find these testimonies to be irrelevant, unnecessary, and inappropriate to the analysis of risk as the best evidence is the written contract. The contractual provision, Section M of Missions’s policy, regarding excess coverage and any concomitant risk, speaks for itself and directly on point; namely:
M. SUBROGATION—
In as much as this policy is “Excess Coverage”, the Insured’s right of recovery against any person or other entity cannot be exclusively subrogated to the Company. It is, therefore, understood and agreed that in case of any payment hereunder, the company will act in concert with all other interests (including the Insured) concerned, in the exercise of such rights of *486 recovery. The apportioning of any amounts which may be so recovered shall follow the principle that any interests (including the Insured) that shall have paid an amount over and' above any payment hereunder, shall first be reimbursed up to the amount paid by them; the Company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Insured) of whom this coverage is in excess are entitled to claim the residue, if any. (emphasis added.) Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Insured) concerned, in the ratio of their respective recoveries as finally settled.
Additionally, Traveler’s subrogation provisions are almost identical to Section M of Mission’s policy, in that: (1) a primary insurer does not recover anything in a settlement of a subrogation claim until the excess insurer recovers the balance it paid; and (2) reasonable expenses resulting from the subrogation action are apportioned among the primary and excess insurers in the ratio of their respective losses for which recovery is sought. These provisions clearly indicate that Travelers would not have been reimbursed from any settlement of its subrogation claim unless Mission had been reimbursed in full for the balance that it paid and obviously protected Davidson against that risk. In fact, the record substantiates that Travelers indeed acted in conformity with Section M of Mission’s policy throughout the subrogation action. After Travelers paid Davidson $61,976.10 for hourly fees charged during the Gearench action, it billed Mission the “pro-rata” share of $50,820.40 for Davidson’s services. The only party in the case sub judice who wants to deviate from the established practices between, and | contractual precepts related to, a primary and excess insurer in a subrogation claim is Davidson, under the guise of a non-existent risk.
Based on the foregoing, I fail to see any rational basis for Davidson to collect an additional $543,382.43 as it would be unconscionable to posture that this amount is appropriate for “fifty or less” hours or to collect twice for the same work. This fee is clearly excessive, and as such, a judgment to the contrary is manifestly erroneous. Notwithstanding, the record does support an award of $4,250 ($85 x 50 hours) in attorney’s fees for the “fifty or less” hours Davidson expended on Mission’s behalf but for which it was not compensated. See Teche Bank and Trust Company, supra.
For the foregoing reasons, I would reverse the judgment of the trial court and order that Davidson, Meaux, Sonnier, McElligott and Swift be awarded $4,250 in attorney’s fees.